IN THE SUPREME COURT OF NORTH CAROLINA

No. 248PA24

Filed 14 August 2026

STATE OF NORTH CAROLINA

v.

KEDRICK DAQUANE THOMAS

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 295 N.C. App. 564 (2024), affirming an order entered on 20 December 2021 and granting a new trial on judgments entered on 23 February 2022 by Judge Keith O. Gregory in Superior Court, Wake County. On 27 June 2025, the Supreme Court allowed defendant's conditional petition for discretionary review as to additional issues. Heard in the Supreme Court on 17 February 2026.

*Jeff Jackson, Attorney General, by Benjamin Szany, Assistant Attorney General, for the State-appellant.*

*Thomas, Ferguson & Beskind, LLP, by Olivia A. Warren, for defendant-appellee.*

DIETZ, Justice.

We allowed discretionary review in this case to address emerging questions about the scope of our recent decision in *State v. Chambers*, 387 N.C. 521 (2025). *Chambers* concerned the constitutionality of N.C.G.S. § 15A-1215(a), a state law authorizing trial courts to replace a departing juror with an alternate after deliberations have already begun. We held that N.C.G.S. § 15A-1215(a) was

constitutional because it includes two "critical safeguards" that protect the right to a twelve-person jury. *Chambers*, 387 N.C. at 526–27.

Since *Chambers*, criminal defendants have argued that the decision is fact-specific and that review of the constitutionality of juror substitutions under N.C.G.S. § 15A-1215(a) requires a case-by-case analysis of factors such as the length of time the previous jury deliberated, the length of time the new jury deliberated, or the length and detail in the trial court's instructions concerning the substitution.

We reject this approach. In *Chambers*, we held that, if a trial court complies with N.C.G.S. § 15A-1215(a) by (1) substituting an alternate juror only after a sitting juror is first excused, and then (2) instructing the newly composed jury to begin deliberations anew, the verdict is rendered by the constitutionally requisite jury of twelve. *Id.* Applying that holding here, the jury substitution was constitutional because the trial court complied with N.C.G.S. § 15A-1215(a). We reverse the portion of the Court of Appeals decision that found the juror substitution unconstitutional.

We also accepted review of a separate Fourth Amendment issue concerning warrantless searches of monitoring data for defendants on post-release supervision. We later ordered supplemental briefing to address whether that Fourth Amendment issue is preserved for appellate review. After reviewing the parties' supplemental filings, we hold that the issue is not preserved. Accordingly, we modify and affirm this portion of the Court of Appeals decision on preservation grounds. We remand the case for the Court of Appeals to address the remaining issues on appeal.

**Facts and Procedural History**

In 2019, a car drove by a convenience store in Raleigh and an occupant in the rear passenger side fired multiple shots, killing one person and seriously injuring three others. Law enforcement identified multiple suspects involved in the drive-by shooting, including Defendant Kedrick Daquane Thomas, whom they believed was the shooter. At the time, Thomas was on post-release supervision for other crimes. Investigating officers obtained location data from an ankle monitor Thomas wore as a condition of post-release supervision. The officers did not obtain a warrant or consult with Thomas's post-release supervising officer before acquiring the monitoring data. That data placed Thomas near the crime scene at the time of the shooting.

The State charged Thomas with one count of first-degree murder and three counts of assault with a deadly weapon with intent to kill inflicting serious injury. Thomas moved to suppress the ankle monitor data. The trial court denied the motion.

The case then went to trial. During jury selection, a prospective juror informed the court that he had a vacation in two weeks and had already booked a flight. Despite the possibility that this juror would need to be excused if the trial ran long, both the State and Thomas allowed the juror to be seated. The jury also included two alternate jurors.

After a ten-day trial, the jury began deliberating and, after roughly two hours, sent a note to the trial court stating, "We have a hung jury situation at this point.

After reviewing the evidence and discussing it thoroughly, we are not seeing any movement towards a decision." The trial court sent the jury back to continue deliberating after determining that, with only two hours of deliberations so far, an *Allen* charge would be premature.

After another hour of deliberations, the jury sent a second note asking to review evidence concerning Thomas's interrogation with law enforcement officers. The trial court then asked the jury if they preferred to receive the evidence immediately or recess for the weekend and return on Monday. The jury preferred to recess. The trial court then sent the jury home for the weekend. Before doing so, the court excused the juror who needed to depart for the long-planned vacation. After explaining to the parties that the court would substitute an alternate juror and instruct the jury to restart deliberations, the trial court asked, "Any objection from the defense?" Thomas responded, "No, Your Honor."

The trial court then informed the jury that it was substituting the alternate juror and that "the jury would now be required to start their deliberations over because the alternate juror was not privy to the previous deliberations. So you would be required to start the deliberations over." After re-instructing the jury that all deliberations must take place in the jury room, the court added, "you'll have to start your deliberations, respectfully, over starting Monday at 9:00."

The trial court then released the jury for the weekend and informed the parties that the court would begin proceedings on Monday by granting the jury's request to

receive the interrogation evidence. The court again asked whether the parties had any objections: "Any objection to anything as far as how the Court handled any of this?" Thomas again responded that he had no objection.

After the newly composed jury deliberated for most of the day, the jury sent a note to the trial court indicating that "we still do not have a unanimous decision. We have reviewed the evidence multiple times with no movement." The trial court then provided an *Allen* charge and sent the jury back to continue deliberating. Two hours later, the jury returned a verdict finding Thomas guilty of second-degree murder and one count of assault with a deadly weapon with the intent to kill inflicting serious injury.

Thomas appealed on a number of grounds, including that the trial court erred by denying his motion to suppress and violated his constitutional rights by substituting the alternate juror after deliberations had begun. The Court of Appeals rejected Thomas's suppression argument but agreed with Thomas's juror substitution argument. *State v. Thomas*, 295 N.C. App. 564 (2024). The court relied on its then-controlling precedent in *State v. Chambers*, 292 N.C. App. 459 (2024), *rev'd*, 387 N.C. 521 (2025).

By the time the Court of Appeals issued its decision, this Court had already allowed review of *Chambers*, which the Court of Appeals acknowledged in its opinion in this case: "Although the Supreme Court of North Carolina has granted discretionary review of *Chambers*, this Court remains bound by *Chambers* and we

are therefore required to grant Defendant's request for a new trial based upon the juror substitution." *Thomas*, 295 N.C. App. at 569. Because the court vacated and remanded on the juror substitution issue, it declined to address Thomas's remaining evidentiary arguments.

The State filed a petition for discretionary review on the juror substitution issue, and Thomas filed a conditional petition for discretionary review on the suppression issue. We allowed both petitions.

## Analysis

### I. Juror substitution after deliberations began

We begin with the trial court's mid-deliberation juror substitution. In *State v. Chambers*, we held that this type of juror substitution is constitutional if it complies with the requirements set out in N.C.G.S. § 15A-1215(a). 387 N.C. at 526–27. We allowed discretionary review in this case to address emerging arguments from criminal defendants concerning the scope of our decision in *Chambers*.

Before we examine the *Chambers* holding, we must first address a preservation argument raised by the State. In *Chambers*, the defendant did not object to the trial court's juror substitution. In response to the State's waiver argument, we held that "issues related to the structure of the jury that found defendant guilty were preserved notwithstanding defendant's failure to object." *Id.* at 524. This exception to ordinary preservation rules was warranted, we explained, because of "the significance of errors related to a jury's structure." *Id.*

The State argues that this case is distinguishable from *Chambers* because Thomas did not merely fail to object; he affirmatively disclaimed any objection. Specifically, when the trial court proposed substituting the alternate juror, the court asked Thomas directly, "Any objection from the defense?" Thomas responded, "No, Your Honor." Thomas repeatedly confirmed to the court that he had no objection to the substitution. The State also points out that Thomas knew from the outset of the trial that the excused juror had a potential scheduling issue and might need to be excused but did not seek to remove the juror from the pool. These facts, the State argues, mean Thomas invited the error, which distinguishes the case from *Chambers*.

"The invited error doctrine applies when a defendant's affirmative actions directly precipitate error." *State v. Gillard*, 386 N.C. 797, 817 (2024) (cleaned up). Typically, invited error requires an "affirmative request for a specific action." *State v. Hooper*, 382 N.C. 612, 626 n.4 (2022).

We have two reservations about the State's invited error argument. First, the State is the party that petitioned for discretionary review in this case. Under Rule 16(a) of the Rules of Appellate Procedure, our review "is limited to consideration of the issues stated in . . . the petition for discretionary review." N.C. R. App. P. 16(a). In its petition, the State did not identify invited error as a ground for discretionary review. Instead, the only preservation issue for which the State sought review was whether the automatic preservation rule from *Chambers* conflicts with earlier precedent from this Court and should be distinguished on the facts of this case. We

are not convinced that the waiver issue articulated by the State in the petition is broad enough to include the invited error argument that the State included in its new brief.

In any event, because of "the significance of errors related to a jury's structure," we believe invited error in this context would require more than merely stating "No, Your Honor" when asked if there were any objections. We leave open the possibility that invited error could apply if the defendant affirmatively encouraged the trial court to pursue the substitution. But on these facts, we decline to apply the invited error doctrine. We instead apply the special preservation rule we established for these substitution issues in *Chambers* and hold that the issue is automatically preserved for the reasons set out in *Chambers*. 387 N.C. at 524.

We therefore turn to the merits of Thomas's challenge to the juror substitution. Under N.C.G.S. § 15A-1215(a), a trial court may replace a juror with an alternate after deliberations have begun so long as the substitution occurs after the sitting juror is first excused and the court instructs the jury "to begin its deliberations anew." *Id.* at 526–27.

In *Chambers*, we held that N.C.G.S. § 15A-1215(a) was constitutional. *Id.* The jury in *Chambers* retired to begin deliberations in the afternoon. *Id.* at 522. The jury deliberated for around 30 minutes and then concluded for the day. *Id.* at 522–23. The next morning, the trial court excused a juror for a medical reason. *Id.* The court then substituted an alternate and instructed the jury as required by N.C.G.S. § 15A-

1215(a) that it must "begin anew" and "you must restart your deliberations from the beginning." *Id.* at 527.

Importantly, our analysis in *Chambers* was about the constitutionality of the statute, not the practice of substituting a juror after deliberations have already begun. In other words, we examined whether a juror substitution that complies with the statutory criteria is constitutional. *Id.*

We held that it is. The core holding of *Chambers* is that N.C.G.S. § 15A-1215(a) is consistent with the constitutional requirement that a jury be composed of twelve jurors because the statute "provides two critical safeguards that ensure that the twelve-juror threshold remains sacrosanct." 387 N.C. at 526. First, the statute ensures that "in no event shall more than twelve jurors participate in the jury's deliberations" because it permits the participation of an alternate only after a sitting juror is first removed. *Id.* (cleaned up). Thus, we explained, there will only ever be a total of twelve members of the jury that is deliberating. Second, the statute "requires trial courts to instruct juries to 'begin deliberations anew' if an alternative juror is substituted after jury deliberations have begun." *Id.* (cleaned up). This further prevents the "risk that the verdict will be rendered by thirteen people" because, by starting "anew," the jury necessarily "restarts deliberations" and "any discussion in which the excused juror participated is disregarded and entirely new deliberations are commenced." *Id.* at 526–27. Importantly, we did *not* hold that the jury must be expressly instructed to disregard any earlier deliberations. That is not a requirement

of N.C.G.S. § 15A-1215(a). Instead, we held that, by instructing the jury to "begin deliberations anew," the jury necessarily will start "entirely new deliberations" and disregard any earlier ones. *Id.*

In short, we held in *Chambers* that when a trial court complies with N.C.G.S. § 15A-1215(a) by substituting an alternate juror only after a sitting juror is first excused and then instructing the newly composed jury to begin deliberations anew, "the ultimate verdict is rendered by the constitutionally requisite jury of twelve" and is not subject to further constitutional challenge on this ground. *Id.*

Having laid out the holding in *Chambers*, we turn to Thomas's argument in this case. This case, like a number of other cases since *Chambers*, seeks to narrow our holding by asking us to "set the parameters" for its use in the lower courts. By "set the parameters" of *Chambers*, what Thomas means is redefine *Chambers* as a case about its specific facts, rather than a constitutional analysis of N.C.G.S. § 15A-1215(a). If we do so, Thomas argues, this case is distinguishable because of three categories of distinct facts.

First, Thomas contends that the trial court in this case gave the "begin deliberations anew" instruction on Friday evening after substituting the alternate juror and then excused the jury for the weekend. In *Chambers*, by contrast, the trial court gave the "begin deliberations anew" instruction in the morning, immediately before the newly composed jury began its new deliberations.

Second, Thomas contends that the trial court's instruction in this case was

-10-

phrased differently than the one in *Chambers* because the trial court only said that the jury "would now be required to start their deliberations over" and did not, as in *Chambers*, also instruct the jury to "disregard entirely any deliberations taken place before the alternate juror was substituted."

Third, Thomas contends that the deliberations in this case were more advanced at the time of the substitution because the jury deliberated for three hours and had already reported it could not reach a verdict, while in *Chambers* the jury deliberated for 30 minutes and did not give any indication as to the progress of deliberations.

These factors do not distinguish this case from *Chambers*. As noted above, in *Chambers*, we held that the substitution procedure outlined in N.C.G.S. § 15A-1215(a) was constitutional. In other words, we held that when a trial court complies with the two "critical safeguards" of the statute by (1) substituting the alternate juror only after excusing the sitting juror, and (2) instructing the newly composed jury to begin deliberations anew, the substitution is constitutional. *Id.* at 526.

Thus, if the trial court complies with the two "critical safeguards" outlined above, that is the end of the analysis. We decline Thomas's request to frame the *Chambers* test as a case-by-case inquiry with "parameters" that depend on how long the jury deliberated, how recently the jury received the "begin deliberations anew" instruction, or what additional instructions the court provided beyond the critical safeguard of being told to "begin deliberations anew." None of these factors bear on

the constitutional analysis we laid out in *Chambers*. If the trial court complies with the requirements of N.C.G.S. § 15A-1215(a), that satisfies the constitutional criteria. In this case, the trial court's instructions to the jury satisfied the constitutional requirements, and thus, even though there are some factual differences between this case and *Chambers*, the substitution was constitutional.

It is worth noting here that the *Chambers* analysis approving N.C.G.S. § 15A-1215(a) is not unusual. This is the same test applied under the United States Constitution and many other state constitutions, which likewise permit "substitution of an alternate juror in place of a regular juror after deliberations have begun" so long as "the judge instructs the reconstituted jury to begin its deliberations anew." *Claudio v. Snyder*, 68 F.3d 1573, 1575–76 (3d Cir. 1995) (collecting cases); *State v. Sullivan*, 949 A.2d 140, 155 (N.H. 2008); *State v. Trent*, 398 A.2d 1271, 1273 (N.J. 1979); *State v. Wirth*, 85 P.3d 922, 925 (Wash. Ct. App. 2004).

Moreover, the purpose of N.C.G.S. § 15A-1215(a) is not unusual. The Criminal Procedure Act contains many examples of statutes intended to create procedural rules that ensure trial courts meet the minimal constitutional floor for that subject matter. *See, e.g.*, N.C.G.S. § 15A-1022 (guilty pleas); N.C.G.S. § 15A-1242 (waiver of right to counsel). Each of these statutes provides a roadmap for constitutional compliance. So, for example, with respect to the constitutional requirement to waive the right to counsel, section 15A-1242 sets out a required colloquy with the defendant. "A trial court's inquiry will satisfy this constitutional requirement if conducted

pursuant to N.C.G.S. § 15A-1242." *State v. Moore*, 362 N.C. 319, 322 (2008). The same is true here. A juror substitution will satisfy the constitutional requirements if conducted pursuant to N.C.G.S. § 15A-1215(a). *Id.*

In sum, the trial court complied with N.C.G.S. § 15A-1215(a) when it substituted an alternate juror after deliberations began. Under *Chambers*, that substitution was therefore constitutional. We reverse the decision of the Court of Appeals on this issue, acknowledging that the court did not yet have the benefit of our decision in *Chambers* when it issued its decision.

## II. Motion to suppress the ankle monitor data

Next, we address Thomas's argument concerning the denial of his motion to suppress. We initially allowed discretionary review on this issue to consider the standard that applies to searches for monitoring data that is collected as a condition of post-release supervision. But during our review, we identified a preservation issue with this constitutional question and directed the parties to submit supplemental briefing. Having reviewed the supplemental briefing, we hold that this issue is not properly preserved for appellate review and affirm the decision of the Court of Appeals on this basis.

In a typical criminal case, preserving a Fourth Amendment challenge for appellate review requires two steps. First, the defendant must pursue a pretrial motion to suppress the evidence under the Criminal Procedure Act and secure a ruling from the trial court. *See* N.C.G.S. § 15A-975. Second, the defendant must

renew that challenge with a timely objection during trial. This means a "defendant cannot rely on his pretrial motion to suppress to preserve an issue for appeal." *State v. Golphin*, 352 N.C. 364, 463 (2000). Instead, "the defendant must make an objection at the point during the trial when the State attempts to introduce the evidence." *Id.*

This two-step rule may seem formalistic, but it serves several important purposes. First, a "pretrial ruling on a motion to suppress evidence is preliminary." *State v. Waring*, 364 N.C. 443, 468 (2010). This matters because, at trial, the evidence introduced may differ from what was identified and addressed in the motion to suppress. *Id.* Thus, a "contemporaneous objection" when the evidence is introduced at trial ensures that the trial court is examining the trial evidence itself, rather than a forecast of that evidence in a pretrial filing. *Id.*

Equally important, renewing objections at trial acknowledges the reality of how a criminal prosecution works. As the parties each prepare their case, engage in criminal discovery, assemble evidence, subpoena trial witnesses, and so on, a defendant's trial strategy can evolve. Evidence that the defendant once sought to exclude might now be useful to the defense. As a result, a defendant always has the choice to waive any constitutional infirmity with trial evidence and permit the evidence to be introduced as part of a trial strategy. *See United States v. Petruk*, 929 F.3d 952, 958 (8th Cir. 2019).

A contemporaneous objection to evidence is therefore necessary to confirm to the trial court that the defendant still desires for the evidence to be excluded. *Waring*,

364 N.C. at 468. This also means that the defendant must object again if the same evidence is introduced in another context, through another witness, or at a different stage of the trial. *State v. Alford*, 339 N.C. 562, 570 (1995). After all, the same trial-strategy concerns that may lead a defendant to waive an objection at the outset of trial could also arise during trial. *Id.*

Applying these waiver principles here, we hold that Thomas waived his objection to the challenged evidence by affirmatively informing the trial court, repeatedly, that he did not object to the same evidence. Specifically, Thomas moved to suppress his ankle monitor data in a pretrial motion to suppress. Thomas then renewed that objection at trial when the State's witness referenced that ankle monitor and the State sought to introduce a spreadsheet containing the machine-generated monitoring data.

But as the State's direct examination of the witness continued, the State repeatedly introduced maps showing Thomas's ankle monitor location at various points in time superimposed over aerial or street maps. When the State introduced these maps, the trial court asked Thomas's counsel directly if Thomas had any objection. Counsel repeatedly answered, "No objection" or "No, Your Honor."

Later, on cross-examination, Thomas asked a detective about information received by law enforcement that could suggest people other than Thomas were in the car involved in the drive-by shooting. This line of questioning fit a potential defense theory, which involved Thomas's own statements that he was near the car

involved in the shooting but riding in a different car. Thomas's car, he claimed, turned down a side road just before the shooting and was not involved in the crime.

Later in the trial, Thomas called his own expert witness in geolocation data, who compared the tracking data from Thomas's ankle monitor with location data from the cell phone belonging to another participant in the drive-by shooting. That expert ultimately testified that there was insufficient data to determine whether Thomas's ankle monitor was in the same location as that cell phone at the time of the shooting. Again, this testimony could support a defense theory that Thomas was not one of the occupants of the car involved in the shooting.

This sequence of events raises the obvious possibility that Thomas intended to waive his objection to the ankle monitor data in order to use that data in his own defense. That, in turn, distinguishes the case from those cited by Thomas in his supplemental briefing, such as *State v. Corbett*, 376 N.C. 799, 825–26 (2021). In *Corbett*, the defendant objected to an expert report multiple times during the expert's testimony but failed to object at least once during a long line of questioning. *Id.* We held that the defendant's overall objection was preserved despite the occasional failure to object. *Id.*

Here, by contrast, Thomas affirmatively told the trial court—repeatedly—that he had "no objection" to the admission of the evidence. Moreover, there is a basis in the record to understand why Thomas might change positions and waive any objection to the evidence. Accordingly, we hold that Thomas waived his earlier

objections to the challenged evidence when he informed the trial court that he had "no objection" to the admission of maps containing that same evidence. *Alford*, 339 N.C. at 570.

We close by addressing Thomas's argument that we should ignore the preservation issue because the State did not raise it until this Court requested supplemental briefing. As explained in more detail in another case decided today, the State's failure to raise the issue is not a waiver because the State is the appellee. *State v. Lingerfelt*, No. 38A25, slip op. at 12 (N.C. Aug. 14, 2026). "A reviewing court is not constrained to uphold a lower court ruling solely on the legal grounds presented by the appellee." *Id.* "Were it otherwise, it could compel an appellate court to reverse a judgment that is legally sound—in effect permitting litigants to stipulate to what the law is and, as a result, permitting them to force an appellate court to invalidate a proper trial court judgment." *Id.*

This does not mean appellees can feel comfortable omitting arguments that support their position. This Court has long held that it will not engage in a "voyage of discovery through the record," and the same is true for a voyage through potentially meritorious legal arguments and theories. *Cecil v. Snow Lumber Co.*, 197 N.C. 81 (1929). So, when an appellee fails to raise an argument that supports affirmance, that party runs the risk that this Court will not address the argument on its own initiative. Here, however, we believed it important to examine this preservation question. We ordered supplemental briefing to ensure the parties had a fair opportunity to address

the issue themselves, and we now hold that Thomas's argument is not preserved for appellate review. We therefore modify and affirm the decision of the Court of Appeals based on this alternative ground. We remand the case to the Court of Appeals to address the remaining evidentiary challenges that the Court of Appeals has not yet examined. *Thomas*, 295 N.C. App. at 580.

## Conclusion

We reverse the decision of the Court of Appeals with respect to the juror substitution issue, modify and affirm the Court of Appeals with respect to the motion to suppress, and remand for the Court of Appeals to address Thomas's remaining arguments on appeal.

REVERSED IN PART; MODIFIED AND AFFIRMED IN PART; AND REMANDED.

Justice BERGER concurring.

I concur with the portion of the majority opinion reversing the Court of Appeals' determination regarding the juror substitution. I write separately because I disagree with the majority that *Chambers* was controlling precedent when the Court of Appeals issued its decision.

The underlying premise of horizontal stare decisis is that binding precedent is knowable in advance, i.e., when confronted with an earlier published decision, an intermediate appellate court can ascertain the decisions it must follow with some amount of research and thought. *In re Civil Penalty* solidified the principle of horizontal stare decisis in North Carolina, holding that where a panel of the Court of Appeals has decided an issue, that Court is bound by the holding until overturned by this Court. 324 N.C. 373, 384 (1989).

A decision that has been stayed has no precedential weight. *See State v. Gonzalez*, 263 N.C. App. 527, 528 (2019) (stating that when this Court stays a mandate, the stayed opinion "does not yet have any precedential effect"). This makes sense because a stay of the mandate suspends the operative force of the decision pending review. *See* N.C. R. App. P. 8; N.C. R. App. P. 23. When this Court allows review of a lower court's decision and stays the mandate, that should alert the lower court to await clarification before extending the rule to new cases, especially in the context of outcome determinative or constitutional holdings. Put another way, a

mandate that has been stayed is not effective on the parties to that case and should therefore not be used to bind strangers to that litigation because the decision has not been permitted to take effect. But even if the panel below disagreed with the effect a stay or supersedeas has, it was still bound by *In Civil Penalty* to follow *Gonzalez*. It did not.

In the decision below, the Court of Appeals acknowledged, contrary to *Gonzalez*, that "[a]lthough the Supreme Court of North Carolina has granted discretionary review of *Chambers*, this Court remains bound by *Chambers* and we are therefore required to grant Defendant's request for a new trial based upon the juror substitution." *State v. Thomas*, 295 N.C. App. 564, 569 (2024). The Court of Appeals' reliance on *Chambers* proved dispositive in this case, resulting in a new trial and this appeal.

The panel in *Gonzalez* treated the stay as removing that decision from the body of binding case law. The panel below in this case wrongly treated supersedeas as leaving *Chambers* undisturbed. What is worse, the panel below did not cite to, distinguish, or otherwise acknowledge a conflict with *Gonzalez* or the Rules of Appellate Procedure.

Certainly, allowing discretionary review alone does not divest a case of potential precedential effect. But *Chambers* was not just under review. This Court had issued a writ of supersedeas and the panel below did not grapple with that issue, apparently reflexively relying on *In re Civil Penalty* to do the bulk of its work. If this

Court has told the world that a case is under review and the mandate should be stayed, that should have some import on our colleagues next door. It did in *Gonzalez.*

The purpose of a stay or supersedeas is to hold matters in place until this Court speaks. When an intermediate appellate court treats a suspended decision as controlling, the stay is stripped of its meaning. The panel below gave license for lawyers to argue in our trial courts that *Chambers* had some binding effect when it did not. It could absolutely have been persuasive authority. But that is not what the panel below articulated, and in failing to follow its own precedent or the Rules of Appellate Procedure, the Court of Appeals highlights again what was discussed in one of my prior concurrences.

In *In re N.M.W.*, 389 N.C. 57, 58–60 (2026) (Berger, J., concurring), I expressed concern about problems *In re Civil Penalty* creates with first-in-time panel draws and that inattentiveness to this Court's precedent can have the practical effect of overruling it (something our Constitution does not allow). *See* N.C. Const. art. IV, § 12; *Holmes v. Moore*, 384 N.C. 426, 437 (2023). To reiterate briefly, stare decisis typically attaches when a principle has become settled by a series of decisions. *State v. Ballance*, 229 N.C. 764, 767 (1949). But a single decision seldom has stare decisis impact. *See Mial v. Ellington*, 134 N.C. 131, 157–58 (1903). Rule 31.1 of the Rules of Appellate Procedure now supplies a mechanism for resolving panel disagreements at that Court of Appeals, and that procedure was not available when *In re Civil Penalty* was decided. *See* N.C. R. App. P. 31.1. The conflict between *Gonzalez* and

*Thomas* illustrates again that there is a structural problem that needs to be addressed.

So what should the panel below have done?  There were at least two options. The better option would have been to hold this case in abeyance until *Chambers* was decided.  Alternatively, the Court of Appeals could have issued an unpublished opinion.  If the panel below was following *Chambers*, it was not plowing new ground, so why did the panel decide to publish?  The reality is that there are few issues on which either this Court or the court below have not spoken.  So, unpublished decisions should be the rule rather than the exception, especially with the disruptive potential the jurisprudence of our intermediate court has on this Court's constitutional obligation.

But institutional fidelity means we keep practices intact despite obvious costs, even if the cost is the constitutional authority of this Court.

Justice EARLS dissenting.

I dissent from the majority's holding that the trial court in this case complied with N.C.G.S. § 15A-1215(a) when it substituted an alternate juror after deliberations began.

On the outset, since its amendment in 2021, N.C.G.S. § 15A-1215(a)'s judicial interpretation and binding precedent is *State v. Chambers*, 387 N.C. 521 (2025). In *Chambers*, the specific issue was whether the jury was constitutionally empaneled with the essential number of twelve members. *Chambers*, 387 N.C. at 525, 527; *see also State v. Dalton*, 206 N.C. 507, 512 (1934) (stating the "essential attributes" of a trial by jury include "number, impartiality, and unanimity"). In contrast, the specific issue before this Court in Mr. Thomas's case is whether the jury was properly instructed, in compliance with N.C.G.S. § 15A-1215(a), when the trial court substituted an alternate juror after deliberations began. I would hold that the trial court failed to comply with N.C.G.S. § 15A-1215(a). The jury having failed to begin deliberations anew, Mr. Thomas is entitled to a new trial.

In pertinent part, subsection 15A-1215(a) states, "The judge may permit the seating of one or more alternate jurors. . . . The court should ensure that the alternate jurors do not discuss the case with anyone until that alternate replaces a juror or is discharged. . . . If an alternate juror replaces a juror after deliberations have begun, the court must instruct the jury to begin its deliberations anew." N.C.G.S. § 15A-

1215(a) (2025). In determining that the ultimate verdict in *Chambers* was rendered by the constitutionally requisite jury of twelve members, this Court relied on the trial court's jury instruction, which we called "exactly the instruction required by statute." 387 N.C. at 527. It read as follows:

> The law of this state grants the defendant to [sic] a unanimous verdict reached only after full participation of the [twelve] jurors who ultimately return a verdict. This right may . . . only be assured if the jury deliberations begin anew. So, fortunately, this happened after you-all had not gotten far in this because it was late in the day, but I need to tell you that you must restart your deliberations from the beginning. This means that you should disregard entirely any deliberations taken place before the alternate juror was substituted and should consider freshly the evidence as if the previous deliberations had never occurred.

*Id.* (alternations in original).

In Mr. Thomas's case, both the State and Mr. Thomas agreed to sit a juror that had a planned vacation. The jury included two alternate jurors. The trial of this matter lasted ten days. After the first two hours of deliberation on a Friday, the jury failed to reach a verdict, and it informed the court that it was unable to agree because of "a hung jury situation." The trial court instructed the jury to continue deliberations. After another hour of deliberations, the jury asked to review the hard copy and video evidence of the police interrogation of Mr. Thomas. The trial court agreed to allow the jury to receive the evidence it sought to review after the weekend recess and excused the juror that had the planned vacation.

After substituting the juror, the trial court provided the new twelve-

member jury with instructions about deliberations three times before dismissing

the jury for the weekend recess. The first instruction was dubious and skeptical,

as the trial court stated that:

> [U]nder the new case law, I think what monkey wrench, as far as [the excused juror], because I think I need to address that. I think I need to address that first also. Because I don't want the alternates to—well, under case law, they're required to start their deliberations over again if, in fact, another juror is replaced. So maybe I'm overthinking it. They're not going to hear any evidence, obviously, or anything.

The trial court's second instruction stated that "[a]s a function of [the

alternate juror], . . . the jury would now be required to start their deliberations

over because the alternate juror was not privy to the previous deliberations. So

you would be required to start the deliberations over."

In its final instruction to the jury, the trial court stated, "You're not

allowed to form or express any opinion about this case separate and apart from

what you've done in your jury deliberations with the understanding now that

there's another—there's a new juror, alternate juror, who is a part of the jury

panel and you'll have to start your deliberations, respectfully, over starting

Monday at 9:00."

Subsequently, on Monday morning, the evidence that the previous jurors

had requested on Friday was passed to the new jury and the requested video

played. After the video had been played, the jurors were sent back to the jury

room with no instruction given to them on the requirement that they disregard

prior deliberations and begin deliberations anew.

While a jury is presumed to follow the instructions of the trial court, *State v. Prevatte*, 356 N.C. 178, 254 (2002), "there are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored," *Bruton v. United States*, 391 U.S. 123, 135 (1968). Jury structure violations have been consistently acknowledged as one of those contexts. *Chambers*, 387 N.C. at 534 (Riggs, J., concurring in part and dissenting in part). This presumption is precisely why the substance and timing of a trial court's instructions matter so greatly.

A bare "begin anew" instruction does not reliably communicate to jurors that everything that came before must be set aside. This is exactly the kind of gap that *Bruton* warns against: the gap between what a jury is presumed to grasp and what a jury can be relied upon to grasp. *See Bruton,* 391 N.C. at 137 (holding that despite clear instructions to the jury to disregard inadmissible evidence, the instruction alone is not a substitute for protecting the constitutional right at issue).

That gap is not merely academic in Mr. Thomas's case; it is dispositive, because this is precisely where the heightened risk *Bruton* and *Prevatte* describe materializes. The trial court's three instructions on Friday afternoon were, at best, tentative and confusing. The court described the substitution as a "monkey wrench"; candidly told the jury, "[M]aybe I'm overthinking it"; and only indirectly referenced "case law"

requiring the jury to "start their deliberations over." Nowhere in any of the three instructions did the trial court tell the jury it must disregard the two hours of deliberations that had already occurred with the excused juror. That omission alone should have prompted the trial court to supply the missing language once the jury reconvened. It did not. Instead, the jury was excused for the weekend, returned Monday morning, received the video and documentary evidence that the previous jury had specifically requested as a result of their deliberations before the substitution, and was sent back to deliberate with no instruction whatsoever—begin anew, disregard, or otherwise. In fact, the trial court's decision to give the jury the evidence requested as result of the very deliberations that were supposed to be disregarded essentially prevented the jury from beginning anew.

Whatever force a bare "begin anew" instruction might carry immediately after it is given, that force cannot survive an intervening weekend recess, the receipt of substantive evidence requested by the prior jury, and total instructional silence at the very moment deliberations actually resumed. A trial court that never made an explicit instruction to disregard the prior deliberations, and that let two days and evidence requested by the prior jury intervene before deliberations resumed, has not complied with N.C.G.S. § 15A-1215(a) under any formulation of the statute, whether the majority's or *Chambers*'s.

For these reasons, I would hold that the trial court failed to comply with N.C.G.S. § 15A-1215(a). Nothing in this record suggests that the jury actually did set

aside its previous deliberations before returning a verdict finding Mr. Thomas guilty. In fact, by immediately receiving evidence previously requested by the prior jury, they clearly could not have begun anew. Moreover, it cannot simply be assumed that the new jury understood it must begin deliberations anew and disregard everything that came before. Mr. Thomas is entitled to a new trial before a jury of just twelve members, not effectively thirteen, as happened here. I respectfully dissent.

Justice RIGGS joins in this dissenting opinion.